UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER K. ALONSO,<br><br>                              Plaintiff,<br><br>v.<br><br>EL CENTRO POLICE DEPARTMENT,<br><br>                              Defendant. | Case No.:  23cv6-CAB(LR)<br><br>**REPORT AND RECOMMENDATION REGARDING MOTION TO DISMISS COMPLAINT**<br><br>**[ECF No. 19]** |

This Report and Recommendation is submitted to the Honorable Cathy Ann Bencivengo, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On January 3, 2023, Plaintiff Christopher K. Alonso ("Plaintiff"), proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against the El Centro Police Department and several individual El Centro police officers.  (See Compl., ECF No. 1 ("Complaint").)

/ / /

/ / /

/ / /

Now pending before the Court is a "Motion to Dismiss [Plaintiff's] Complaint." (See ECF No. 19 ("Motion").)  For the reasons set forth below, the Court **RECOMMENDS** that Judge Bencivengo **GRANT** the Motion and dismiss Plaintiff's Complaint in its entirety **without prejudice and with leave to amend**.

## I.      BACKGROUND

**A.      City of El Centro's Motion to Dismiss**

**1.      Procedural history**

On January 3, 2023, Plaintiff Christopher K. Alonso ("Plaintiff") commenced this action against the City of El Centro ("City," "El Centro," or "Defendant") (erroneously sued as El Centro Police Department)[1] and individual El Centro police officers Christian Ortega, Valencia, Kirkshaw, and Sargeant Hidalgos for violation of his civil rights under 42 U.S.C. § 1983 during an incident that led to his arrest on the night of October 1, 2022. (Complaint at 1, 4, 7, 10.)  On February 14, 2023, the City of El Centro filed a motion to dismiss for improper service under Federal Rule of Civil Procedure 12(b)(5), or in the alternative for the Court to quash service of the summons and file a waiver of service on behalf of the City that had previously been sent to Plaintiff.  (ECF No. 7.)  After issuing an order explaining that Plaintiff had not adequately served the summons and a copy of the complaint in this action on the City (ECF No. 14), District Judge Bencivengo issued a revised ruling quashing the service of summons, accepting the City's waiver of service, and giving Plaintiff a deadline of May 17, 2023, to serve the individual defendants named in the complaint.  (ECF No. 16.)  The instant motion to dismiss was filed on May 26, 2023 by the City of El Centro, contending that Plaintiff fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 19.)  After District Judge Bencivengo referred the motion to this Court for a Report and

---

[1] The City contends that Plaintiff erroneously sued the El Centro Police Department ("Police Department") rather than the City of El Centro.  (ECF No. 7-1 at 1.)  If Plaintiff seeks to amend his Complaint, he should identify the proper Defendant that he wishes to name in this lawsuit.

Recommendation, Plaintiff filed an opposition on June 13, 2023 (ECF No. 21), and the City filed a reply on July 14, 2023 (ECF No. 22), making the motion fully briefed.  The undersigned held an in-person hearing on the Motion on August 9, 2023.

### 2.    Factual background

The Complaint alleges the following facts:[2]

On October 1, 2022, at approximately 9:30 pm, Plaintiff went to a "7 eleven store" to purchase a money order.  (Compl., ECF No. 1 at 13.)  The cashier told him that the store "did not provide such services" and refused to provide him with a money order.  (Id.)  After a heated verbal exchange with the cashier, Plaintiff told her that "[she] should start looking for another job because [he was] going to call [their] corporate office and they are going to fire [her]."  (Id.)  When Plaintiff left and was driving past the store, he noticed that the cashier was holding a cell phone which he believed was recording him.  (Id.)  He put his car in park, walked over to her, and asked "whether or not [he] could help her" and had another "verbal exchange of words."  (Id.)  Plaintiff then drove off and yelled that she could "call the cops if she wanted as they were not going to do anything" because he was "practicing [his] first amendment right."  (Id.)  Plaintiff denies making any verbal threats throughout this exchange with the cashier.  (Id.)

At approximately 10:30 pm, three El Centro police officers in uniform arrived on the front doorstep of his residence.  (Id.)  The officers asked "whether [he] had some sort of altercation at a 7 eleven store."  (Id.)  Plaintiff told the officers that he "had no incident but [he] did express [him]self with profanity," asking what crime he had committed and "their reason for being in [his] presence."  (Id.)  After the officers "had no comments regarding such statements," Plaintiff advised the officers "to leave his property as they were trespassing," "had no probable cause to be [t]here," and that "they were violating [his] rights."  (Id.)  Plaintiff then began to record on his cell phone "for his own safety."

---

[2] The facts alleged in the Complaint are assumed to be true for the purposes of a Rule 12(b)(6) motion. See N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).

(Id.)  Two of the three officers then "[came] in close proximity of [his] personal space" and would not step away when asked.  (Id.)  Plaintiff then told them that "[he] would fight back if [he was] to be grabbed or touch[ed] unlawfully."  (Id.)  Plaintiff was in "gym shorts and a t shirt[] with sandals" which demonstrated that he "meant no physical threat."  (Id.)

Approximately half an hour later, more units arrived, totaling about seven police cars.  (Id.)  Plaintiff told the new officers that they "did not have a reason to be there and couldn't produce a crime" so they "needed to leave" because "they were trespassing" and "violating [his] rights" "without a warrant."  (Id.)  One new officer "slander[ed] some false crime" but did not "take initiative to take [him] into custody."  (Id.)  Plaintiff then walked back into his front lawn, when an officer told him that "[he] wasn't free to go." (Id.)  Plaintiff replied that "[he] wasn't going anywhere."  (Id.)

Two officers then grabbed Plaintiff's arms and another officer kicked his legs from behind.  (Id.)  Plaintiff did not resist and "fell straight down on [his] belly" with his "right arm stuck" underneath the combined weight of himself and all the officers.  (Id.) Plaintiff was already subdued with no movement by this point, but an officer "constantly hit his ankles as [he] laid on the floor."  (Id.)  Plaintiff told the officers that he was not resisting but could not pull his right hand behind his back due to the weight on top of it. (Id.)  The officers "picked [him] up off the floor with handcuffs" and an officer grabbed his shirt, pulling him by the collar and "excessively choking [him] before placing him inside the patrol unit."  (Id.)  This unit had no cameras and was not video equipped, which did not make him feel safe.  (Id.)  State Court records attached to both parties' filings note that Plaintiff was charged with making criminal threats and violently resisting officers in Imperial County Superior Court.

Plaintiff alleges violations of his constitutional rights under the First and Fourth Amendments, as well as a state law claim for slander against the City and the individual El Centro police officers.  (ECF No. 1 at 3.)  With respect to the Fourth Amendment, Plaintiff alleges that (1) he was arrested without probable cause, and (2) that the officers

1  used excessive force against him.  (Statement Claim at 1.)

2  **C.    Individual Defendants**

3      Plaintiff's Complaint also names several police officers from the El Centro Police

4  Department as individual defendants: Officer Christian Ortega, Officer Valencia,

5  Sergeant Hidalgos, and Officer Kirkshaw.  (Complaint at 2, 8.)  On April 14, 2023,

6  District Judge Bencivengo issued an Order on the City of El Centro's motion to dismiss

7  for improper service, which stated that "Plaintiff must either file a proof of service

8  demonstrating that each defendant has been served with the summons and complaint or

9  SHOW CAUSE in writing, on or before May 17, 2023, why this matter should not be

10  dismissed in its entirety for failure to prosecute." (ECF No. 13.)  On April 27, 2023,

11  District Judge Bencivengo issued a revised order on the City of El Centro's motion to

12  dismiss for improper service, which reiterated the May 17, 2023 deadline to serve the

13  individual officers named in the Complaint.  (ECF No. 16.)  Plaintiff filed a document

14  entitled "Proof of Service" on May 12, 2023 which notes that he effected service on the

15  "El Centro Police Department" by mail, but does not make any mention of service on the

16  individual police officers.  (ECF No. 18.)

## II.    LEGAL STANDARD

17

18  **A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

19      Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint

20  for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A

21  court evaluates whether a complaint states a cognizable legal theory and sufficient facts

22  under Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement

23  of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To

24  survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted

25  as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

26  U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A

27  claim is facially plausible "when the plaintiff pleads factual content that allows the court

28  to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Courts must accept a plaintiff's well-pleaded factual allegations as true and construe all factual inferences in the light most favorable to the plaintiff.  See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).  Courts, however, are not required to accept legal conclusions in the form of factual allegations as true.  Iqbal, 556 U.S. at 678.

**B.    Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must plausibly allege that (1) the acts of defendants (2) taken under color of state law (3) deprived him of his federal rights, privileges, or immunities and (4) caused him damage.  42 U.S.C. § 1983; see also Thornton v. City of St. Helens, 425 F.3d 1158, 1163–64 (9th Cir. 2005).  To prevail on a Section 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant."  Harris v. Schriro, 652 F. Supp. 2d 1024, 1034 (D. Ariz. 2009) (citing Rizzo v. Goode, 423 U.S. 362, 371–72 (1976)).

**C.    Standards Applicable to *Pro Se* Litigants**

A *pro se* litigant's factual allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (reaffirming that this standard applies to *pro se* pleadings post-Twombly).  Courts construing *pro se* litigant's pleadings may not, however, "supply essential elements of claims that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim."  Jones v. Cmty. Redev. Agency of City of L.A., 733 F.2d 646, 649 (9th Cir. 1984) (citations and internal quotation marks omitted).

A court should allow a *pro se* litigant to amend his complaint, "unless the pleading 'could not possibly be cured by the allegation of other facts.'" Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (quoting Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000)). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). A court "should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (internal quotations omitted). Where an amendment of a *pro se* litigant's complaint would be futile, however, denial of leave to amend is appropriate. See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

**D.   Material Outside the Pleadings**

In general, "courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under a motion to dismiss under Rule 12(b)(6)." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Courts can, however, still consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice," without converting the motion into a motion for summary judgment. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).

Under Rule 201(b) of the Federal Rules of Evidence, courts may take judicial notice of adjudicative facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). These indisputable facts are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Id.

**E.      Service on Individual Defendants**

Plaintiffs in a federal civil case may serve individual defendants within a judicial district of the United States by either: (1) following state law service requirements in the state where the district court is located or where service is made; or (2) complying with any of the following federal requirements: (A) "delivering a copy of the summons and of the complaint to the individual personally;" (B) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;" or (C) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e); see also, e.g., Cal. Civ. Proc. Code § 415.30 (listing the requirements for service by mail under California law).  If, however, a defendant is not served within ninety days of filing the complaint, the court "on motion or on its own after notice to the plaintiff[,] must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  While the court must extend the time for service if the plaintiff shows good cause for failure to serve, the court has the discretion to dismiss without prejudice if good cause does not exist.  See id.  The court may not *sua sponte* dismiss a complaint for lack of service without first giving notice to the plaintiff and providing an opportunity to show good cause.  See Farr v. Paramo, No. 16-CV-1279 JLS (MLB), 2020 WL 835309, at *2 (S.D. Cal. Feb. 20, 2020).

## III.      DISCUSSION

**A.      City of El Centro's Motion to Dismiss**

**1.      City's Request for Judicial Notice**

In support of its Motion, the City requests that the Court take judicial notice of twelve "facts" contained in two documents: a complaint against Plaintiff in the Superior Court of California with Case No. JCF006186 and the Transcript of Proceedings from a Preliminary Examination in that same case.  (ECF No. 19-3 ("Request for Judicial Notice") at 2.)  Plaintiff does not object to the City's Request.  (See generally ECF No. 21.)

The undersigned **RECOMMENDS** that the Court grant the City's Request for Judicial Notice to the extent that these factual statements exist in state court filings that are matters of public record.  See Lee, 250 F.3d at 689–90 ("[T]he district court had authority under Rule 201 to take judicial notice of the *fact* of the extradition hearing[.]")

### 2.    Plaintiff's Section 1983 claims

As an initial matter, the Court notes that the Complaint alleges constitutional violations under both the First and Fourth Amendment.  (See Complaint at 3, 9; Statement Claim at 1.)  While Plaintiff alleges that his First Amendment rights were violated, he does not specify in any detail what actions the City took or which of his rights under the First Amendment were deprived during the events that led to his arrest.  (See generally Statement Claim at 1–2 (only mentioning First Amendment rights when telling the cashier to call the police).)  Because it is unclear to the Court how Plaintiff's First Amendment rights were violated,[3] and Plaintiff has failed to properly plead a First Amendment violation, the Court **RECOMMENDS** that the Complaint be dismissed insofar as it asserts a First Amendment violation by the City of El Centro.  Plaintiff is reminded that any allegations in an amended complaint must describe (1) the constitutional right that he believes was violated, (2) the person or entity who violated the right, (3) exactly what that individual or entity did or did not do, (4) how the action or inactions of that person or entity is connected to the violation of a constitutional right, and (5) what specific injury Plaintiff suffered because of that conduct.  See Fed. R. Civ. P. 8(a); see also Harris, 652 F. Supp. 2d at 1034 (to prevail on a Section 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the

---

[3] At the hearing on the motion to dismiss, the Court sought additional clarification on the specific First Amendment violations by the City that Plaintiff experienced.  (Hr'g Tr., ECF No. 25, at 12:9-10.) While Plaintiff asserted that he engaged in an activity protected by the First Amendment by expressing himself with profanity to the cashier, he did not provide any further explanation as to which of his rights were violated under the First Amendment during the events described in the Complaint.  (Id. at 15-17.)

defendant.").  Plaintiff must do this for each claim and each defendant named in an amended complaint.

The Complaint separately alleges Section 1983 claims under the Fourth Amendment based on two theories: (1) that Plaintiff was arrested without probable cause; and (2) that excessive force was used against Plaintiff at the time of his arrest.  (See Complaint at 3, 9; Statement Claim at 1.)  Here, Plaintiff has plausibly alleged that the City was acting under color of state law because the alleged Fourth Amendment violations occurred while officers tried to effect an arrest—an action they performed as part of their official duties.  See Van Ort v. Estate of Stanewich, 92 F.3d 832, 838 (9th Cir. 1996) (explaining that a police officer acts under color of state law when his or her actions are "in some way related to the performance of [their] official duties.") (internal quotations omitted).  The City does not deny that its officers were acting under color of state law, and the Court will accordingly proceed to analyze the Complaint's description of the alleged Fourth Amendment violations further under the pleading requirements for Section 1983 claims.

### 3.    Monell liability

The City argues that the Complaint contains no allegations that could give rise to its liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) and thus fails to state a claim upon which relief can be granted.  (Motion at 4:16.)  Specifically, the City contends that Plaintiff's claims relate wholly to the individual officers, and that there are no allegations in the Complaint that could plausibly lead to vicarious municipal liability. (Motion at 4:15.)

A municipality or local government unit can be held liable under 42 U.S.C. § 1983 if the allegedly unconstitutional actions of its employees were taken pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690.  A municipality can also be liable for adopting an unconstitutional custom, even if such custom has not received formal approval through the "body's official decision-making channels."  Id. at 690–91.  A municipal

entity cannot be held liable under 42 U.S.C. § 1983, however, simply because it employs someone who has allegedly acted unlawfully.  Id. at 691, 694.  A plaintiff must show: (1) that he was deprived of a constitutional right; (2) the municipality has a policy, custom, or practice which amounted to deliberate indifference to that constitutional right; and (3) the policy, custom, or practice was the moving force behind the constitutional violation.  See Dougherty v. City of Covina, 654 F.3d 892, 900–01 (9th Cir. 2011) (citing Monell, 436 U.S. at 694).

### a.    Deprived constitutional right

As noted above, Plaintiff asserts that the City violated his Fourth Amendment rights based on two theories: 1) that he was arrested without probable cause; and 2) that excessive force was used against him.  (See Complaint at 3, 9; Statement Claim at 1.)  Accordingly, Plaintiff sufficiently states a "constitutional right of which he was deprived."  Dougherty, 654 F.3d at 900 (internal quotations omitted).

### b.    Municipal policy and deliberate indifference

There are three commonly recognized categories of municipal policies under this prong of the Monell analysis: "(1) an expressly adopted official policy, (2) longstanding practice or custom, or (3) [employees acting] as a final policymaker."  Thomas v. Cnty. of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014) (numbering added) (citing Monell, 436 U.S. at 694); see also Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003).

### i.    Categories of policies

### 1.    Official policy

Local governing bodies are liable under Section 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690.  A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Fogel v. Collins,

531 F.3d 824, 834 (9th Cir. 2008).

Plaintiff has not asserted that his Fourth Amendment rights were violated under an official policy and thus does not sufficiently state that an official policy led to the constitutional violations in the Complaint.

### 2.    Custom

Liability for an improper custom must be based on practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy, not merely isolated or sporadic incidents.  See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996); see also Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom."); Cain v. City of Sacramento, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) (dismissing the plaintiff's Monell claim because it alleged only a single encounter between plaintiff and jail staff).  A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law."  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (citation and internal quotation marks omitted).

Here, Plaintiff has not asserted that his Fourth Amendment rights were violated under a practice or custom by the City of El Centro.  Accordingly, the Complaint fails to establish liability under this category of the municipal policy standard.

### 3.    Decisions by final policymakers

Local governing bodies can be held liable under Section 1983 when an "official with final policy-making authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it."  Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992). "The identification of policymaking officials is a question of state law."  Praprotnik, 485 U.S. at 124.  Courts analyze whether an official is a policymaker by "consider[ing] whether the official's discretionary decision is 'constrained by policies not of that official's making' and whether the official's decisions are 'subject to review by the

municipality's authorized policymakers.'"  <u>Christie</u>, 176 F.3d at 1236-37 (quoting <u>id.</u> at 127).

Here, Plaintiff has not asserted that any of the officers involved in his arrest were policymaking officials.  Accordingly, Plaintiff does not sufficiently state that a decision by a final policymaker led to the constitutional violations at issue, and the Complaint fails to establish liability under this category of the municipal policy standard.

### ii.    Deliberate indifference

The municipality's policy or custom must also "amount[] to deliberate indifference to the plaintiff's constitutional right."  <u>Dougherty</u>, 654 F.3d at 900; <u>see also</u> <u>Oviatt ex rel. Waugh v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir.1992).  Deliberate indifference requires that the plaintiff "show how the deficiency involved was obvious and the constitutional injury was likely to occur."  <u>Herd v. Cnty. of San Bernardino</u>, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018); <u>see also</u> <u>Cordova v. Imperial Cnty. Narcotics Task Force</u>, No. 321CV00445BENDEB, 2022 WL 84409, at *20 (S.D. Cal. Jan. 7, 2022); <u>Williams v. Brant</u>, No. 23-CV-241 TWR (DDL), 2023 WL 3325185, at *9 (S.D. Cal. May 9, 2023).

Plaintiff has not alleged a municipal policy on behalf of the City of El Centro.  Accordingly, the Complaint fails to allege that a municipal policy enacted by the City amounted to deliberate indifference.  The Complaint fails this prong of the <u>Monell</u> analysis as well.

### c.    Causation

Municipal liability under <u>Monell</u> requires a plaintiff to "show that the [policy or custom] was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation."  <u>Trevino</u>, 99 F.3d at 918 (9th Cir. 1996) (citing <u>Arnold v. International Business Machines Corp.</u>, 637 F.2d 1350, 1355 (9th Cir.1981); <u>City of Springfield v. Kibbe</u>, 480 U.S. 257, 266–68 (1987)) (discussing causation requirement in Section 1983 municipal liability cases).

The Complaint fails this prong of the <u>Monell</u> analysis because it does not allege a policy or custom by the City that led to the violation of Plaintiff's Fourth Amendment

rights.  Thus, Plaintiff has not sufficiently alleged that a municipal policy by the City of El Centro caused the constitutional violation in the Complaint.

### d.      Conclusion

The Complaint does not identify any policy, custom, or practice by the City of El Centro that amounted to deliberate indifference to his constitutional rights.  See Dougherty, 654 F.3d at 900-01.  Additionally, the Complaint does not allege that any policy, custom, or practice was the "moving force" behind any of the constitutional violations at issue in this matter.  See id.  Although dismissal of Plaintiff's Section 1983 claims against the City would be sufficient on this basis alone, the Court will address an additional argument presented by the City's motion to dismiss below.

### 4.      Preclusion

In addition to arguing that the Complaint fails to allege Monell liability, the City asserts that Plaintiff is precluded from litigating the issue of probable cause through collateral estoppel.  (Motion at 5:25–6:23.)  Defendant contends that the probable cause issue in the instant Section 1983 claim is identical to the one decided during the preliminary hearing in Plaintiff's Imperial County Superior Court criminal proceedings, precluding Plaintiff from asserting that probable cause did not exist to arrest him in the instant lawsuit.  (Id. at 6:1–2, 6:21–22.)

"Ordinarily affirmative defenses may not be raised by motion to dismiss . . . but this is not true when, as here, the defense raises no disputed issues of fact."  Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984) (citations omitted); see also Portnoy v. City of Woodland, 368 F. App'x 836, 837 (9th Cir. 2010) ("The district court properly dismissed the Fourth Amendment claims that police officers lacked probable cause to arrest Portnoy because the record establishes that he had a full and fair opportunity to litigate that issue at his preliminary hearing.") (citing Haupt v. Dillard, 17 F.3d 285, 288–90 (9th Cir.1994).  "State law governs the application of collateral estoppel or issue preclusion to a state court judgment in a federal civil rights action."  Ayers v. City of

Richmond, 895 F.2d 1267, 1270 (9th Cir. 1990).  Under California law, there are five threshold requirements for collateral estoppel to apply:

> 1) the issue to be precluded must be identical to that decided in the prior proceeding; 2) the issue must have been actually litigated at that time; 3) the issue must have been necessarily decided; 4) the decision in the prior proceeding must be final and on the merits; and 5) the party against whom preclusion is sought must be in privity with the party to the former proceeding.

People v. Garcia, 39 Cal. 4th 1070, 1077 (Cal. 2006).  "As a general rule, each of these requirements will be met when courts are asked to give preclusive effect to preliminary hearing probable cause findings in subsequent civil actions for false arrest."  Wige v. City of Los Angeles, 713 F.3d 1183, 1185 (9th Cir. 2013) (citing McCutchen v. City of Montclair, 87 Cal. Rptr. 2d 95, 99-101 (Cal. Ct. App. 1999)).

A plaintiff can rebut this general rule by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith.  See Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004).  In California, plaintiffs can avoid the preclusion of subsequent false arrest claims based on preliminary hearings in three established circumstances:

> (1) the plaintiff is able to "demonstrate that the issue of probable cause was not litigated at the preliminary hearing for tactical reasons"; (2) the plaintiff has alleged that "the arresting officer lied or fabricated evidence presented at the preliminary hearing"; or (3) "the evidence presented at the preliminary hearing [was] not the same as the evidence available to [the officers] at the time of plaintiff's arrest."

Patterson v. City of Yuba City, 748 F. App'x 120, 121 (9th Cir. 2018) (quoting McCutchen, 87 Cal. Rptr. 2d at 101).

Here, each of the requirements for collateral estoppel to preclude Plaintiff from relitigating the issue of probable cause in the instant civil rights action are met.  First, the issue to be precluded is probable cause related to the same incident as the one decided during the preliminary hearing in Imperial County Superior Court.  (See City's Request at

2:1–14.)  Second, the issue of probable cause was actually litigated during the preliminary hearing—Plaintiff's defense counsel was able to cross-examine witnesses that the prosecution called to support a finding of probable cause.  (See City's Request at 2:15–18.)  Third, the issue of probable cause was necessarily decided by the superior court judge who determined that Plaintiff should be held over for trial on his criminal charges.  (See City's Request at 3:12–14.)  Fourth, the decision in the preliminary hearing was final and was reached on the merits.  (See City's Request at 2:15–3:14.)  Finally, the party against whom preclusion is sought (Plaintiff) is the same as the one in the earlier probable cause hearing.  (See generally City's Request.)

Plaintiff provides no argument disputing the preclusive effect of the Imperial County Superior Court's finding of probable cause during the preliminary hearing.  As it is currently pled, the Complaint makes no allegations that (1) probable cause was not litigated at the preliminary hearing for tactical reasons, (2) the arresting officer lied or fabricated evidence presented at the hearing, or (3) the evidence at the preliminary hearing was not the same as the evidence available to the officers at the time of arrest.  At best, Plaintiff alleges that "the officer in charge . . . came up with false claims" (Complaint at 5), officers falsified reports (Id. at 4, 10), and that "Officer [H]idalgos stated and slandered some false crime."  (Statement Claim.)  These allegations fall short of meeting any of the above exceptions to collateral estoppel because they do not connect the falsification of the criminal charges alleged generally throughout the Complaint to misconduct during the preliminary hearing on the probable cause for Plaintiff's arrest in Imperial County Superior Court.  Cf. Page v. Stanley, No. CV 11-2255 CAS SS, 2012 WL 5471107, at *7 (C.D. Cal. Oct. 19, 2012), report and recommendation adopted, No. CV 11-2255 CAS SS, 2012 WL 5464629 (C.D. Cal. Nov. 9, 2012) (holding that allegations of falsifying a police report and fabricating evidence with intent and effect to deprive plaintiff of a full and fair opportunity to litigate probable cause at a preliminary hearing fell within an exception to collateral estoppel); see also Carino v. Gorski, No. 07-455-PHX-NVW, 2008 WL 4446706, at *6 (D. Ariz. Sept. 30, 2008) ("To rebut the

23cv6-CAB(LR)

presumption [of probable cause], a plaintiff must point to something more 'than the fact that the officers' reports were inconsistent with [his] own account of the incidents leading to his arrest."); <u>Hahn v. City of Carlsbad</u>, No. 15-CV-2007 DMS (BGS), 2017 WL 2620680, at *3 (S.D. Cal. June 16, 2017) ("[t]he fact that [the officer] testified regarding the incident in a manner that differed from Plaintiff's perception does not amount to the type of wrongful conduct that rebuts the presumption of probable cause.") (citing <u>Awabdy</u>, 368 F.3d at 106).  Although Plaintiff may be able to point to facts that rebut the presumption of probable cause in a subsequent amended pleading, the Superior Court's findings during the preliminary hearing preclude the Complaint's Section 1983 false arrest claim against the City in the Complaint currently before this Court.

### 6. Remaining State Law Claims

Plaintiff also alleges a state law cause of action based on "slander."  (Complaint at 10; Statement Claim at 1 ("Officer Hidalgos stated and slander[ed] some false crime[.]").)  Because all of Plaintiff's federal claims should be dismissed, the undersigned will **RECOMMEND** that the Court decline to exercise supplemental jurisdiction over the remaining state law claim and that this claim be dismissed as well. <u>See</u> <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting <u>Carnegie–Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988)).

### 7. Conclusion

The Complaint fails to allege constitutional violations on behalf of the City under Section 1983 for several reasons.  First, the Complaint does not adequately allege how the City violated Plaintiff's First Amendment rights.  Second, even if the Court could ascertain what First Amendment right Plaintiff alleges was violated, the Complaint fails to allege that the City should be held liable for its officers' conduct under <u>Monell</u> for

either the First or Fourth Amendment claims.  Finally, because the Imperial County Superior Court's determination of probable cause is identical to the issue of probable cause underlying the Fourth Amendment false arrest claim, Plaintiff is precluded from relitigating that issue in a civil rights action before this Court.[4]  The undersigned will therefore **RECOMMEND** that the Court **GRANT** the City's motion to dismiss the Complaint's causes of action under Section 1983.

Additionally, because Plaintiff's federal claims against the City should be dismissed, the undersigned will accordingly **RECOMMEND** that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against the City.  A court may exercise supplemental jurisdiction to hear a plaintiff's state law claims that "derive from a common nucleus of operative fact[s]" as his or her federal claims.  28 U.S.C. § 1367(c); see also Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1174 (9th Cir. 2002).  But where it has dismissed all federal claims over which it had original jurisdiction, it may decline to extend its jurisdiction to the remaining state claims.  See Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010).  The undersigned therefore **RECOMMENDS** that the Court **GRANT** the City's motion to dismiss and dismiss each of Plaintiff's claims against the City of El Centro without prejudice.

## B.   Individual Defendants

The initial ninety days provided by Rule 4(m) to effect service on the individual defendants have long since passed in this case, yet a review of the Court's docket indicates that the individual defendants still have not been served.  See Fed. R. Civ. P. 4(l)(1) ("[P]roof of service must be made to the court.").  Plaintiff only attempted service by mail on the "El Centro Police Department," which is not sufficient service on the individual defendants.

In addition, Plaintiff failed to meet several deadlines and extensions related to

---

[4] Because these reasons are sufficient to dismiss Plaintiff's federal claims, the Court declines to address the City's other arguments in support of its motion to dismiss.  (See Motion at 6:24-10:4.)

1    service of the individual police officers involved in his arrest.  Plaintiff did not serve the

2    individual defendants within the original ninety-day window under Rule 4(m).  Over 100

3    days after the Complaint was filed, the Court issued an order granting in part the City's

4    motion to dismiss for improper service, which instructed Plaintiff to "file a proof of

5    service demonstrating that each defendant has been served with the summons and

6    complaint or SHOW CAUSE in writing, on or before May 17, 2023, why this matter

7    should not be dismissed in its entirety for failure to prosecute."  (ECF No. 14.)  This new

8    deadline was over 130 days from Plaintiff's filing date and the Court noted that "[f]ailure

9    to timely respond to this order will result in dismissal of this lawsuit."  (Id.)  In a

10   subsequent revised order, the Court reiterated this deadline and noted that the individual

11   defendants would be dismissed for failure to serve if he did not comply with the May 17,

12   2023 deadline.  (ECF No. 16.)  It has been over 90 days since the extended deadline

13   passed, and Plaintiff still has not filed any proof that he attempted to serve the individual

14   defendants in this action.

15         The Court therefore concludes that dismissal of the individually named police

16   officers without prejudice pursuant to Rule 4(m) is appropriate.  "Failure to follow

17   technical requirements does not warrant dismissal where '(a) the party that had to be

18   served personally received actual notice, (b) the defendants would suffer no prejudice

19   from the defect in service, (c) there is a justifiable excuse for failure to serve properly,

20   and (d) the plaintiff would be severely prejudiced if his complaint were dismissed.'"

21   Johnson v. San Diego Metro. Transit Sys., No. CIV. 06CV1192L(CAB), 2008 WL

22   3411728, at *7 (S.D. Cal. Aug. 11, 2008) (quoting Borzeka v. Heckler, 739 F.2d 444, 447

23   (9th Cir. 1984)).  Here, however, there is no evidence that the individual defendants

24   received actual notice, the Court has received no explanation from Plaintiff regarding the

25   delay, and Plaintiff would not be severely prejudiced by dismissal because his claims

26   would not be time barred.  See Butler v. Nat'l Cmty. Renaissance of California, 766 F.3d

27   1191, 1198 (9th Cir. 2014) (holding that Section 1983 claims use California's statute of

28   limitations for personal injury claims, which is two years).  Accordingly, to the extent

that any claims remain against the unserved Defendants, the undersigned

**RECOMMENDS** that the Court dismiss the individual named police officers Christian

Ortega, Officer Valencia, Sergeant Hidalgos, and Officer Kirkshaw, without prejudice

pursuant to Rule 4(m).

**C.   Leave to Amend**

Because it is not clear that Plaintiff cannot allege facts to support his claim, and

because Plaintiff is proceeding *pro se*, the undersigned **RECOMMENDS** that the Court

grant Plaintiff leave to amend his pleading.  See Ramirez, 334 F.3d at 861 (court must

grant a *pro se* plaintiff leave to amend his complaint "unless the pleading 'could not

possibly be cured by the allegation of other facts'") (quoting Lopez, 203 F.3d at 1130);

Ferdik, 963 F.2d at 1261 ("[B]efore dismissing a pro se complaint the district court must

provide the litigant with notice of the deficiencies in his complaint in order to ensure that

the litigant uses the opportunity to amend effectively.").

Plaintiff will have three options to cure the pleading deficiencies noted above:

(1) Plaintiff may continue this action in this Court by filing a document labeled

"First Amended Complaint" within forty-five (45) days of the date of District Judge

Bencivengo's order on this Report and Recommendation.  To withstand dismissal, the

amended complaint must attempt to correct the factual and legal defects described above.

If Plaintiff chooses to file an amended complaint, Plaintiff may also file a document titled

"Request for Extension" within forty-five (45) days of the date of District Judge

Bencivengo's order on this Report and Recommendation to extend his time to serve the

individual defendants pursuant to Rule 4(m).

(2) Plaintiff may file a "Notice of Intent Not to Amend Complaint" within forty-

five (45) days of the date of District Judge Bencivengo's order on this Report and

Recommendation.  This document will be construed as an indication that plaintiff wishes

to challenge dismissal of the complaint by seeking review of this order in the Ninth

Circuit Court of Appeals.

(3) Plaintiff may do nothing in response to District Judge Bencivengo's order on this Report and Recommendation.  If plaintiff does not respond to this order by filing either a timely amended complaint or a timely notice of intent not to amend, plaintiff will be deemed to have consented to the dismissal of this action.

## IV.   CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the Court **RECOMMENDS** that District Judge Bencivengo issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting the City's Request for Judicial Notice (ECF No. 19-3); (3) granting the motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by City and dismissing the Complaint in its entirety with leave to amend; (4) dismissing the individual defendants for failure to effect service pursuant to Federal Rule of Civil Procedure 4(m); and (5) ordering Plaintiff, if he chooses to proceed with this action, to file a First Amended Complaint no later than forty-five (45) days from the date of the District Court's order.

**IT IS HEREBY ORDERED** that no later than **September 25, 2023**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 13, 2023**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

23cv6-CAB(LR)

**Additionally, the parties are reminded that they should not write letters to the judges assigned to the case, or otherwise communicate with the judges assigned to the case unless opposing counsel is notified of such communications.  All matters to be called to a judge's attention should either be mailed to the Clerk's Office in San Diego or handed to a member of the Clerk's Office staff in person and must be sent to the opposing side.  <u>See</u> Civil Local Rule 83.9.  <u>Email communication with a judge's chambers to submit a filing is not permitted under any circumstance</u>.**

**IT IS SO ORDERED.**

Dated:  August 23, 2023

_____
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge